Friedman, J.P.
(dissenting in part). I respectfully dissent to the extent the majority affirms the declaration in favor of plaintiffs and modifies to grant them summary judgment as to liability on their fifth cause of action, for conversion. In my view, a declaration should be issued in favor of defendants and *102 all of plaintiffs’ claims for damages should be dismissed. The majority, in reaching a contrary result, applies to police and firefighter members of the tier 3 retirement system (i.e., those hired on or after July 1, 2009) an increased-take-home-pay (ITHP) benefit that, as enacted in the 1960s and 1970s by the relevant legislative bodies, applies only to members of tiers 1 and 2 of the retirement system. In a nutshell, the operative language creating the ITHP benefit (a reduction of annuity contributions) cannot be applied to tier 3 members, whose retirement plan lacks any annuity component. The majority essentially rewrites the law to fit the square peg of the tier 3 system into the round hole of an ITHP program that was created for members of tiers 1 and 2. In so doing, the majority takes the 1974 law that extended the preexisting ITHP benefit to tier 1 and 2 employees and applies it to police officers and firefighters hired in 2009 or later, who belong to the entirely dissimilar tier 3 of the retirement system.
The question raised by this appeal is whether New York City police officers and firefighters hired on or after July 1, 2009, who are (or will be) members of tier 3 of the City’s pension system (Retirement and Social Security Law, art 14, § 500 et seq.), are entitled to benefit from the ITHP program extended (but not created) by Retirement and Social Security Law § 480 (b), which was originally enacted in 1974.[1] Under the ITHP program, the employer assumes certain retirement contributions that would otherwise be made by the employee. Retirement and Social Security Law § 480 (b) (i) does not itself set forth the parameters of the ITHP program. Rather, section 480 (b) refers to a “program” that already existed at the time of the statute’s original enactment in 1974 and provides that this preexisting program shall continue to exist. Specifically, Retirement and Social Security Law § 480 (b) (i) provides, in pertinent part: “Any program under which an employer in a public retirement system . . . assumes all or part of the contribution which *103 would otherwise be made by its employees toward retirement, which expires or terminates during [1974], is hereby extended.”[2]
From the foregoing, it emerges that whether the ITHP program applies to employees covered by tier 3 cannot be determined from the language of Retirement and Social Security Law § 480 (b) itself. In this regard, it should be borne in mind that tier 3, which was not created until 1976, did not exist when Retirement and Social Security Law § 480 (b) was first enacted in 1974, and that there were no police or firefighter members of tier 3 until 2009, after all of the extensions of the ITHP program had been enacted. Thus, contrary to the view of the majority and Supreme Court, the fact that Retirement and Social Security Law § 480 (b) does not contain language limiting its applicability to any particular tier of the pension system is not determinative. Rather, we must look to the preexisting provisions of law that created the ITHP program to determine whether that program has any applicability to police officers and firefighters covered by tier 3. When this approach is taken, it becomes clear that the ITHP program has no applicability to tier 3 employees.
Before the enactment of Retirement and Social Security Law § 480 (b), authority for the ITHP program with respect to police officers existed under section 13-226 of the Administrative Code of the City of New York. The operative provisions of section 13-226 (a) state that “the contribution of each member made pursuant to subdivision bore of section 13-225 of this subchapter . . . shall be reduced by [a specified percentage] of the compensation of such member” (emphasis added). Section 13-225 (entitled “Contributions of members and their use; annuity savings fund”) provides for covered employees to contribute (in amounts determined by an actuary) only to the annuity portion of their retirement plan, not to the pension portion of the retirement plan (see Administrative Code § 13-255 [1] [the retirement allowance of a member of tier 1 and tier 2 comprises, inter alia, “(a)n annuity based on his or her required annuity savings . . . and in addition, a pension”]).[3] It is undisputed, *104 however, that the retirement allowance for members of tier 3 — unlike the allowance for members of tiers 1 and 2 — does not have any annuity component, and contributions are not determined by an actuary. Instead, a tier 3 member simply contributes to the retirement system at a fixed rate of 3% of his or her annual compensation (Retirement and Social Security Law § 517) and receives “a pension equal to fifty percent of [the] final average salary, less fifty percent of the primary social security retirement benefit commencing at age sixty-two” (Retirement and Social Security Law § 505 [a]). Hence, tier 3 members make no annuity contributions to which the pre-1974 ITHP program extended by Retirement and Social Security Law § 480 (b) could apply. It is irrelevant that the statute itself does not state that the program being extended is restricted to reduction of annuity contributions because that restriction is plain upon examination of the preexisting ITHP program that the statute extended.[4]
The majority manages to reach its result by resolutely ignoring the fact that the nature of a “program” extended by Retirement and Social Security Law § 480 (b) cannot be determined from the text of section 480 (b) itself. Again, section 480 (b) (i) simply refers, in pertinent part, to “[a]ny program under which an employer . . . assumes all or part of the contribution which would otherwise be made by its employees toward retirement, which expires or terminates during [1974].”[5] To determine whether a preexisting “program” extended by section 480 (b) *105 applies to tier 3 employees, one must know the nature of that program, and the nature of the program can be discovered only by turning to the body of the law that created the program before section 480 (b) was enacted. In the case of the ITHP program, the relevant pre-1974 body of law (Administrative Code §§ 13-225, 13-226) reveals that ITHP provides for the employer’s assumption of all or part of the employee’s contribution only to the annuity portion of his or her retirement.[6] Since tier 3 does not include any annuity component, the ITHP program cannot be applied to tier 3 employees. Simply put, in the case of a tier 3 employee, there is no annuity contribution to which the ITHP program can be applied. It seems to me that this conclusion is unavoidable unless one rewrites the ITHP program to apply to non-annuity pension contributions, which is essentially what the majority chooses to do. I do not believe that we have authority to engage in judicial legislating of this kind. So far as I can tell, the majority offers no response to this objection.
I am not persuaded by plaintiffs’ argument, adopted by the majority, that Retirement and Social Security Law § 508-a (a), which applies to tier 3 members generally, indicates that the ITHP program is applicable to tier 3 police officers and firefighters. Retirement and Social Security Law § 508-a (a) provides in pertinent part that “[a] death benefit plus the reserve-for-increased-take-home-pay, if any, shall be payable upon the death of a member of a retirement system” under specified circumstances (emphasis added). The statute’s reference to a “reserve-for-increased-take-home-pay” is qualified by the phrase “if any,” indicating that tier 3 members will not necessarily be entitled to such a reserve. Given that Retirement and Social Security Law § 508-a (a) does not itself create any ITHP program for tier 3 members, the statute’s placeholder reference to payment of a “reserve-for-increased-take-home pay, if any,” does not change the fact that, to determine whether “any” ITHP reserve actually does apply to a particular tier 3 member, one must examine the underlying ITHP provision. The majority utterly fails to undertake any such examination.
To be clear, it is my view that ITHP does not apply to tier 3 employees because the benefit provided by ITHP (reduction of *106 the employee’s annuity contributions) cannot be applied (absent judicial rewriting) to an employee who makes no annuity contributions. Thus, there is little force to the majority’s objection to my position that ITHP applies “to any government employee, regardless of pension tier.” The fact is that tier 3 officers do not make annuity contributions to which ITHP would apply, and I decline to join the majority in rewriting ITHP from the bench to make it apply to pension contributions that the program, as written, simply does not cover.
Based on the foregoing, it is my view that tier 3 police officers and firefighters are not entitled (or, for those to be appointed in the future, will not be entitled) to participate in the ITHP program. Accordingly, I would reverse the order appealed from, render a declaration in favor of defendants, and dismiss the petition and complaint. To the extent the majority does otherwise, I respectfully dissent.
Sweeny and Manzanet-Daniels, JJ., concur with Acosta, J.; Friedman, J.P., dissents in part in a separate opinion.
Order, Supreme Court, New York County, entered January 20, 2012, modified, on the law, to deny defendants’ motion as to the fifth cause of action (conversion) as against the City, and grant plaintiffs’ motion for summary judgment on the issue of the City’s liability for conversion, and otherwise affirmed, without costs.

. Plaintiffs in this matter are two police unions and a firefighters union. Defendants are the City and its police and firefighters’ pension funds. Although tier 3 of the pension system was created in 1976, tier 2 was extended by Retirement and Social Security Law § 440 (c) for new police officers and firefighters appointed through June 30, 2009. The legislature failed to override the Governor’s veto of a bill that would have further extended tier 2 status for new police officers and firefighters appointed after June 30, 2009. The City has not appointed any new firefighters since June 30, 2009, but the interests of firefighters to be appointed in the future are represented by the firefighters union plaintiff in this proceeding.

. As originally enacted in 1974, Retirement and Social Security Law § 480 (b) extended the referenced “program” until 1976. Over the ensuing three decades, the statute was repeatedly amended to provide for successive two-year extensions. The extension was made indefinite by the statute’s most recent amendment (L 2009, ch 504, § 1, part A, § 5).

. Although the retirement program for firefighters is set forth in a different chapter of title 13 of the Administrative Code, the City represents, and *104 plaintiff firefighters union does not dispute, that the basic scheme for the firefighters in 1974, when Retirement and Social Security Law § 480 (b) originally extended the ITHP program, was similar to that for the police — a retirement allowance having annuity and pension components, with the employee contributing to the annuity only, subject to reduction pursuant to the ITHP program.

. Moreover, because the operative language of section 13-226 (establishing the ITHP program for police officers) provides for the employer’s assumption of the employee’s “contribution . . . made pursuant to subdivision b or e of section 13-225 of this subchapter,” it is not evident to me how the ITHP program can be applied to a tier 3 police officer who, by definition, makes no contribution “pursuant to subdivision b or e of section 13-225.” To reiterate, the contributions of tier 3 employees are prescribed by article 14 of the Retirement and Social Security Law, not by Administrative Code § 13-225.

. Given that section 480 (b) simply extends certain preexisting programs fitting a very general description, there is no basis for the majority’s claim that “the legislature shifted the ITHP codification from the New York City Administrative Code to the Retirement and Social Security Law.” A person seeking to learn how ITHP functions would search Retirement and Social Security Law § 480 (b) in vain for such information.

. Thus, the majority errs in asserting that “ITHP increased officers’ take-home pay by having the City contribute a portion of each officer’s required pension contributions” (emphasis added). Again, tier 1 and 2 officers contribute only to the annuity component of their retirement; the pension component is entirely funded by the employer.